IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 25 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

|  |  |  |
|---|---|---|
| James Lee Cecil, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:23-cv-00310 |
| | ) | |
| Major Chad Keller *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff James Lee Cecil, Jr., was incarcerated as a pretrial detainee at the Western Virginia Regional Jail ("Jail") at the times relevant to his complaint. He filed an action pursuant to 42 U.S.C. § 1983, alleging various Defendants violated his Constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments of the Constitution in connection with the institution's policies for processing and distributing incoming mail. He also complained about a restrictive book policy that was announced and then suspended without implementation.

This matter is before the court on three motions to dismiss filed by Defendants (Dkts. 72, 73, 77), as well as Cecil's motion for a preliminary injunction (Dkt. 58) and "motion for in camera review" of the motions to dismiss (Dkt. 86). For the reasons that follow, the court will grant Defendants' motions to dismiss and deny Cecil's two motions.

### I.     Facts and Procedural History

Cecil filed an amended complaint on August 2, 2023 (Dkt. 20), and a second amended complaint on April 16, 2024 (Dkt. 63). The second amended complaint is the operative

complaint in this action. He also propounded discovery (Dkt. 70), and he did not advise the court subsequently of any issues with discovery.[1]

Cecil claims that Defendants infringed upon his First Amendment rights of freedom of speech and association, Fourth Amendment rights to privacy and to be free from unreasonable searches and seizures, Fifth Amendment rights under the Takings Clause, and Fourteenth Amendment rights under the Due Process Clause. (2d Am. Compl. ¶¶ 61–68.)

Cecil's second amended complaint is based upon his dissatisfaction with the Jail's process for handling incoming inmate non-legal mail. The Jail (and the Virginia Department of Corrections ("VDOC") more broadly) hired private contractors to process and scan incoming inmate mail. *See generally* https://vadoc.virginia.gov/family-and-friends/sending-mail/. Incoming mail is sent to a centralized address, where it is electronically scanned. (2d Am. Compl. ¶¶ 9, 15, 16.) Inmates can then access their scanned mail using Jail-provided tablet computers. (*Id.* ¶¶ 15, 31.) Inmates do not receive hard copies of the mail. (*Id.* ¶ 16.) Cecil sued both companies that provided the mail scanning and/or access services for the Jail while he was incarcerated, Global Tel Link and Smart Communications Holding, Inc. (collectively referred to as the "Corporate Defendants").

Cecil complains about the "taking" of his mail in that he cannot possess hard copies or access the mail at all times because access to the tablets is limited or restricted during

---

[1] Cecil has repeatedly invoked a claimed "need for discovery." (*E.g.*, Dkt. 84 at 2.) But, he has not identified any particular information he lacks other than information related to exhaustion, and he did issue discovery. Because the court's disposition of this case is determined by Cecil's failure to respond to the legal arguments asserted by Defendants and by the insufficiencies of the claims asserted against Defendants such that Cecil failed to state a plausible claim of entitlement to relief as to any Defendant, no additional factual development would prevent the dismissal of Cecil's case.

lockdown. (*Id.* ¶¶ 15, 26–27, 30–31, 33, 41–42.) He complains about the invasion of his privacy given that the institution can review the scanned mail at subsequent points. (*Id.* ¶ 17.) He complains that certain pictures or mail sent to him were rejected with no way to challenge the rejection. (*Id.* ¶¶ 12, 28, 45–46.) He also contends that there is a contract between a stamp purchaser and the U.S. Government that Defendants have breached. (*Id.* ¶¶ 18–22.) He objects to having no "alternative" but to join "smartjailmail.com," which he claims is a conservative organization. (*Id.* ¶¶ 10–11.) He claims that he has been denied the right to print mail by the Jail, Superintendent Cox, and Major Chad Keller (collectively, the "Institutional Defendants"). (*Id.* ¶ 23.) He finally states that the requirement to pay for copies of pictures if desired places an "undue burden" upon him and his family, but he does not specify any costs he has incurred. (*Id.* ¶¶ 34–35.) After filing this action, Cecil was released[2] and has continued to proceed *pro se.* (Dkt. 43.)

Defendants moved to dismiss, or in the alternative, for summary judgment in response to the second amended complaint. (Dkts. 72, 73, 77.) Cecil responded at various points to Defendants' arguments for dismissal. (Dkts. 47, 49, 58, 69, 84, 86, 87, 88.) The court considered all of his arguments advanced at any point in this litigation, even arguments directed to the superseded complaints.

---

[2] A released inmate's declaratory and injunctive claims are moot when an inmate leaves the facility where he was subject to the challenged policy, practice, or condition because he no longer has a cognizable interest in the resolution of said claim. *Incumaa v. Ozmint,* 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991). Accordingly, Cecil's motion for a preliminary injunction (Dkt. 58) and all other requests for declaratory and injunctive relief will be denied as moot.

## II.    Cecil Failed to Oppose the Motions to Dismiss, Justifying Dismissal

Cecil's multiple opposition submissions address only one discrete issue.    The Institutional Defendants asserted lack of administrative exhaustion as an affirmative defense. (Mem. in Supp. of Summ. J. at 6–9 (Dkt. 74).)  The Institutional Defendants state that Cecil failed to appeal his grievance related to the mail system to the highest level of appeal (*i.e.,* an appeal to the Superintendent).  (*Id.*)  Cecil's submissions deal exclusively with that argument; he contends that level of appeal was not made available to him because he was not provided a form or instructions for how to appeal to the Superintendent and because an institutional response to an informal grievance was late.[3]  (*E.g.,* Dkts. 84, 87.)   Cecil's submissions do not address in any manner the other arguments asserted by the Institutional Defendants, which provide independent bases for dismissal.  Additionally, Cecil did not respond to any of the arguments made by the Corporate Defendants.

"The Fourth Circuit has made clear that a 'party waives an argument . . . by failing to develop its argument—even if its brief takes a passing shot at the issue.'"  *Bigelow Corp. v. Hounds Town USA, LLC*, No. 3:23-CV-00134, 2023 WL 4939386, at *3 (W.D.N.C. Aug. 2, 2023) (quoting *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)); *see also Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim.").  When a plaintiff fails to oppose a motion to dismiss, a district court is "entitled, as

---

[3] Cecil filed a motion asking the court to conduct an *in camera* review of the evidence related to exhaustion.  (Dkt. 86.)  The court will deny the motion because the court's holdings are not directed to the exhaustion issue.  Accordingly, there is no need for further factual development of the exhaustion issue.

authorized, to rule on the . . . motion and dismiss [the] suit on the uncontroverted bases asserted" in the motion. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004).

Accordingly, the court dismisses this action because of Cecil's procedural default of failing to oppose any argument asserted by the Defendants as grounds for dismissal (excepting the exhaustion defense).

### III.    Standard of Review for Motions to Dismiss

Because Cecil is a *pro se* litigant, the court also has considered the substance of Defendants' arguments to ensure that the dismissal of this action is not based solely on a procedural default if Cecil's claims would otherwise have merit. The court also finds that dismissal would be warranted substantively because the second amended complaint fails to state a claim upon which relief could be granted.

In order to avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Owens v. Baltimore*

*City State's Attys. Office*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. A complaint should be dismissed when a plaintiff has not "nudged their claims across the line from conceivable to plausible[.]" *Id.* at 570.

Cecil brings this action *pro se,* so the court liberally construes his pleadings. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, the court may neither construct a plaintiff's legal arguments for them, *Spanos v. Vick*, 576 F. Supp. 3d 361, 366 (E.D. Va. 2021), nor "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, dismissal is appropriate when the complaint fails to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6).

## IV.    Analysis of Motions to Dismiss

The court now identifies the additional reasons that would support a substantive dismissal below.

### A.  The Institutional Defendants are Improper § 1983 Defendants

Defendant Cox was named by Cecil because he is the "ultimate administrative authority" as the Jail's Superintendent. (2d Am. Compl. ¶ 3.) However, "[i]t is well established that a supervisory government official cannot be held liable under § 1983 for the actions of his subordinates solely on the basis of *respondeat superior*." *Shelton v. Wang*, No. 7:20-CV-00704, 2022 WL 4460520, at *7 (W.D. Va. Sept. 26, 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 690–92 (1978)).  A supervisory official may only be liable for his or her subordinate's acts

if the supervisor himself bears personal responsibility for those acts.  *Id.* (citing *Iqbal*, 556 U.S.

at 676).  Cecil did not allege any facts indicating any plausible claim of Cox's supervisory

liability.  To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations of supervisory

liability must contain "specific facts as to misconduct" rather than "boilerplate and conclusory

assertions."  *Whetstone v. Mayor & City Council of Balt. City*, No. ELH-18-738, 2019 WL 1200555,

at *16 (D. Md. Mar. 13, 2019).  Dismissal of the claims against Cox is therefore warranted.

Defendant Keller was named by Cecil because, according to Cecil, Keller was the

official with final decision-making authority regarding grievances and had claimed authority to

correct the claimed wrongdoing asserted in Cecil's grievance.  (2d Am. Compl. ¶ 2.)  But, this

does not support a § 1983 claim.  There is no liability under § 1983 for a prison administrator's

response to a grievance or appeal.  *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Brown v.

Va. Dep't of Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009).

Similarly, an inmate does not have a constitutional right to participate in grievance

proceedings.  *Adams*, 40 F.3d at 75.  "An inmate thus cannot bring a § 1983 claim alleging

denial of a specific grievance process, for example."  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533,

541 (4th Cir. 2017).  Likewise, "any mistakes [the defendants] made in investigating or ruling

on plaintiff's grievances do not rise to the level of a due process violation."  *Smith v. Jones*, No.

1:20cv01157, 2021 WL 4046403, at *4 (E.D. Va. Sept. 3, 2021); *see also Christian v. Thomas*, No.

3:20cv00804, 2022 WL 1303270, at *11 (E.D. Va. May 2, 2022) ("Because Plaintiff enjoys no

constitutional right to participate in grievance proceedings, his allegation that Defendant

Reedy improperly responded to his grievance is legally frivolous.").  Finally, Keller's response

or failure to respond to any grievance does not suffice to demonstrate his personal involvement with any of Cecil's claims as is required.  "In the prison context, allegations that a defendant-prison administrator simply reviewed or responded to the plaintiff's grievance describing *other* defendants' allegedly unconstitutional conduct typically is not enough to demonstrate the administrator's personal involvement in the underlying constitutional violation." *Jones v. Harrell*, No. 7:21-CV-00541, 2024 WL 1249510, at *12–13 (W.D. Va. Mar. 22, 2024) (granting summary judgment to administrator who only responded to grievances).  Therefore, a prison official's "after-the-fact denial of a grievance falls far short of establishing § 1983 liability." *DePaola v. Ray*, No. 7:12-CV-00139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013).  Accordingly, Cecil's claims against Keller fail.

Next, Western Virginia Regional Jail is not an appropriate defendant.  Section 1983 authorizes suits only against a "person" acting under color of state law.  42 U.S.C. § 1983.  It has been repeatedly held that, generally speaking, "[a] local jail . . . cannot qualify as a *person* subject to being sued under § 1983." *Miller v. Sw. Va. Reg'l Jail Auth.*, No. 7:21-CV-00010, 2021 WL 1606469, at *1 (W.D. Va. Apr. 26, 2021); *see also McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 894 (E.D. Va. 1992) ("the jail is not a person under § 1983" and so it "lacks the capacity to be sued").  Accordingly, all of Cecil's claims against the Jail should be dismissed.

### B.  Cecil's Claims against the Corporate Defendants are Insufficiently Pled

Similarly, Cecil's claims against the Corporate Defendants are deficient.  Cecil did not allege facts supporting the conclusory allegation that these private Corporate Defendants acted "under color of state law" as required.  "Section 1983 imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by

the Constitution and laws of the United States." *Smith v. Smith*, No. 7:07-CV-00117, 2007 WL

3025097, at *4 (W.D. Va. Oct. 12, 2007).  As private entities, the Corporate Defendants are

not subject to liability under § 1983 unless they engage in conduct that qualifies as state action.

*See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action

requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983

excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'")

(quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).  In the second amended complaint, Cecil

merely alleges in a conclusory fashion that the Corporate Defendants have "and will continue

to act under color of state law."  (2d. Am. Compl. ¶¶ 5–6.)  Cecil fails to allege any facts

whatsoever to support this bare conclusion.

Additionally, Cecil has failed to specify sufficiently which Defendant took which action,

instead relying on mostly general claims against all Defendants grouped together.  This does

not comply with Rule 8(a)'s pleading requirements.  The Corporate Defendants merely process

and scan the mail; they do not have control over access issues or internal Jail policies and thus

cannot be liable for any claims arising from actions or inactions of the Institutional

Defendants.

### C. Cecil's Second Amended Complaint Contending that the Constitution was Violated Fails to State a Plausible Claim of Entitlement to Relief

Cecil's contentions underlying his § 1983 claim also fail to state a claim upon which

relief could be granted.

#### 1. No First Amendment violation was established.

True, inmates retain their First Amendment right to receive mail.  *Couch v. Clarke*, 7:18-

CV"00049, 2019 WL 1433777, at *4 (W.D. Va. Mar. 29, 2019) (citing *Thornburgh v. Abbott*, 490

U.S. 401, 407 (1989)).  However, the scope of that right "is subject to limitations that jails deem necessary to further legitimate penological interests, such as security and rehabilitation of inmates." *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 524 (1984)).  In fact, the Fourth Circuit has recognized that "the 'freedom of association is among the rights least compatible with incarceration,' because '[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution.'"  *Holloway v. Clarke*, 3:20CV109, 2021 WL 5760853, at *2 (E.D. Va. Dec. 3, 2021) (quoting *Desper v. Clarke*, 1 F.4th 236, 243 (4th Cir. 2021)) (citation omitted).  Courts considering claims challenging prison policies must allow prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  Such matters "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment." *Id.* at 540 n.23 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

Here, under the Jail's system, Cecil is not precluded from receiving the substance of his incoming mail; instead, he takes issue with the fact that he receives electronic copies of his mail as opposed to original paper copies.  However, "[t]he First Amendment protects *communication*, not pieces of paper." *Williams v. Redman*, No. 3:20-CV-196, 2021 WL 1907224, at *4 (N.D. Ind. May 12, 2021) (concluding that an inmate failed to state a First Amendment violation based on the fact that the jail where he was incarcerated copied incoming mail, gave him the copies, and held the originals with his property).  Cecil's displeasure with his receipt

of electronic copies of his mail, not the paper originals, simply does not rise to the level of a

First Amendment violation. *See Mason v. Wright*, No. 1:24CV129, 2025 WL 350230, at *2 (E.D.

Va. Jan. 30, 2025) (rejecting inmate claim about digitized mail because the inmate did "not

dispute that the MRRJ defendants could open, read, and copy that same personal

correspondence" and finding that the "use of a contractor to digitize inmates' personal mail,

without more, does not rise to a level of a constitutional violation whether it is done on or off-

site."); *Wright v. Wilson*, No. 3:23cv746, 2024 WL 4648097, at *4 (E.D. Va. Oct. 31, 2024)

(rejecting challenge to a jail's policy for opening, copying, and then shredding legal

correspondence because it did not violate the prisoner's constitutional rights).

Many other courts outside of the Fourth Circuit also have rejected similar claims. *See*

*Woodell v. Wetzel*, No. 20-3235, 2022 WL 17424287, at *2 (3d Cir. Dec. 6, 2022) (finding no

"precedent that clearly establishes that it violates the First Amendment for the DOC to use

vendors . . . to scan non-privileged mail, send the digital files to the prisons, and destroy the

originals"); *McGhee v. San Mateo Cnty. Sheriff Dep't*, No. 23-cv-01521, 2023 WL 4331029, at *1

(N.D. Cal. July 3, 2023) (dismissing plaintiff's claim that his First Amendment rights were

violated by a new mail policy under which he received his mail in electronic format as he was

still receiving his mail, "albeit in a different manner and format" than before); *Smith v. Wolf*,

No. 19-cv-0711, 2020 WL 4551229, at *6–8 (M.D. Pa. Aug. 6, 2020) (finding that the inmate

failed to state a plausible First Amendment claim concerning the DOC's mail policy, where

the inmate challenged the DOC's use of Smart Communications to, among other things,

copy/scan his mail).  The court is unaware of any authority –and Cecil has not cited any–

holding that an inmate is entitled to possess physical copy print-outs of mail or the originals of mail, if electronic access is provided.

Cecil also complains that he is only permitted to view his mail during non-lockdown periods and that his access is sometimes limited by the number of tablets available and/or if other inmates misbehave. (2d Am. Compl. ¶¶ 23–27, 30–32, 40–42.) First, the Corporate Defendants have no involvement whatsoever in this claim. Additionally, these allegations fail to state a claim against the Institutional Defendants. Cecil's First Amendment rights are not violated simply because he does not have constant access to the scanned mail. In fact, courts have consistently held that a prison policy that permits prison officials to delay delivery of mail to inmates during lockdown periods does not raise any constitutional concerns. *See Green v. Ballou*, 391 F. Supp. 806, 808 (W.D. Va. 1975) (dismissing complaint because the court was not empowered to inquire into the "administrative detail" of why jail did not deliver or send out mail on the weekends); *Langlois v. Dane Cnty. Sheriffs Office & Deputies*, No. 08-cv-541, 2008 WL 4722993, at *1 (W.D. Wis. Oct. 23, 2008) (holding that prison officials' delaying inmate's access to incoming mail for 10 days during lockdowns was too brief to violate the First Amendment); *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (noting "an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support, even as against a motion to dismiss, a cause of action grounded upon the First Amendment."); *Odom v. Tripp*, 575 F. Supp. 1491, 1493 (E.D. Mo. 1983) ("The Courts are clear that an administrative decision by prison officials to withhold or delay the distribution of uncensored mail to prisoners simply does not rise to the level of a constitutional violation so long as the delay is a reasonable one.").

Finally, Cecil states that he has been required to join "smartjailmail.com" without any alternative if he wants to get his mail. He contends that Smart Communications, which operates "smartjailmail.com," is a "conservative based organization" without further explanation. (2d Am. Compl. at 2.) To the extent Cecil agreeing to smartjailmail.com's terms and conditions (which were neither supplied nor explained) could be considered "required membership" in an organization, such a claim might arise under the First Amendment's associational rights. However, Cecil is simply not required to join smartjailmail.com and thus has pled inadequate facts for the court to conclude that he has stated a plausible claim of entitlement to relief on this ground.

   2.  Cecil's Fourth Amendment claim fails.

Cecil's next claim must fail because "a prisoner has no reasonable expectation of privacy, at least under the Fourth Amendment, while incarcerated." *Franklin v. Wall*, 12-CV-614, 2013 WL 1399611, at *3 (W.D. Wis. Apr. 5, 2013) (citing *Hudson*, 468 U.S. at 527–28 (holding that the "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order")); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells.").

Specifically, prison policies and procedures about monitoring and reviewing incoming and outgoing mail have routinely been upheld as a reasonable restraint not violating the Fourth Amendment. *See, e.g.*, *Villafana v. Clarke*, 3:17CV512, 2018 WL 1569489, at *4 (E.D. Va. Mar. 30, 2018) (dismissing inmate's Fourth Amendment claim as frivolous when mail room

employees opened his medical records without authorization because "an inmate's Fourth Amendment rights are not violated when mail is inspected and opened by jail officials"); *Ford v. Forsyth Cnty. Sheriff Dep't*, 1:21CV557, 2023 WL 2049286, at *2 (M.D.N.C. Feb. 16, 2023) ("Thus, there is no Fourth Amendment violation in the opening and inspecting of Plaintiff's non-privileged mail."); *Loiseau v. Norris*, No. 3:10CV870, 2011 WL 4102226, at *3 (E.D. Va. Sept. 14, 2011) ("Prisoners have no reasonable expectation of privacy to non-privileged mail."); *Rowland v. Pistro*, No. 21-CV-4466, 2021 WL 5631692, at *10 (E.D. Pa. Nov. 29, 2021) (holding that "since prison inmates have no expectation of privacy regarding their personal mail, [an inmate] cannot state a plausible claim based on allegations that prison officials are reviewing his personal non-legal mail or other communications" (cleaned up); *Blaisdell v. Dep't of Pub. Safety*, Civil No. 14-00433, 2014 WL 5581032, at *6 (D. Haw. Oct. 31, 2014) ("An inmate has no reasonable expectation of privacy in his cell and is not entitled to Fourth Amendment protection against unreasonable searches and seizures. This applies equally to an inmate's incoming mail.") (internal citation omitted).

3. Cecil failed to present a plausible claim under the Fifth Amendment.

As established above, Cecil has no underlying right to hard copies or the originals of incoming mail sent to him. Accordingly, he has no property interest protected under the Fifth Amendment as incorporated against the states pursuant to the Fourteenth Amendment. The Fifth Amendment's "Takings Clause" provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. To succeed on a takings claim, a plaintiff must, as a threshold matter, establish the existence of the property interest allegedly taken. *See Snyder & Assocs. Aquisitions LLC v. United States*, 133 Fed. Cl. 120, 124–25 (Fed. Cl.

2017) ("When a party alleges that his property has been taken without compensation, the Court applies a two-part test. It first determines whether a plaintiff has a cognizable property interest . . . if the plaintiff does not show the existence of a cognizable property interest, 'the court's task is at an end.'"). "Because the existence of a cognizable property interest is a necessary element of any taking claim, a plaintiff must show that he possessed such an interest in order to survive a 12(b)(6) motion." *Troxelle v. United States*, No. 10-312 C, 2010 WL 3982349, at *4 (Fed. Cl. Oct. 6, 2010); *see also Leider v. United States*, 301 F.3d 1290, 1295 (Fed. Cir. 2002) (a cognizable property interest has been labeled a "bedrock requirement" of any Fifth Amendment takings claim). Without such a cognizable property interest and without any allegations that his mail has been taken by any of the Defendants for "public use," Cecil has failed to state a viable claim under the Fifth Amendment.

4. <u>Cecil presented no plausible claim of a Fourteenth Amendment violation.</u>

Cecil invokes a due process violation under the Fourteenth Amendment, and inmates do have some interests in mail protected under the due process guarantees of the Fourteenth Amendment. Cecil specifically complains that pictures sent to him were rejected, and that the institution has no procedures for challenging the rejection. Of course, the prison can legitimately reject inappropriate pictures, such as explicit photographs, after screening an inmate's mail. *See, e.g.*, *Prison Legal News v. Stolle*, 319 F. Supp. 3d 830, 838–39 (E.D. Va. 2015). But Cecil does not describe the rejected pictures or provide any detail about them.

Despite the lack of specific factual allegations about the rejected pictures, Cecil is clear that his complaints relate to incoming mail. (*See* 2d Am. Compl. ¶ 12.) He is not the sender as he does not state that his outgoing mail has been restricted. But, the right to contest rejected

mail is owned by the sender, not the recipient. *See Thomas v. Clear*, No. 7:20-CV-00584, 2021 WL 4267665, at *9 (W.D. Va. Sept. 20, 2021) (holding due process does not require providing the recipient of mail an opportunity to contest the rejection). "For a jail's rejection of mail to be constitutional, the jail is required to (1) notify the inmate of the rejection of a letter written or addressed to him; (2) provide the author of the letter a reasonable opportunity to protest that decision; and (3) refer complaints to a prison official other than the one who originally rejected the mail." *Id.* (citing *Procunier v. Martinez*, 416 U.S. 396, 418–19 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). Cecil's second amended complaint fails to allege that (1) he did not receive notice of the rejection from the Jail, which would have come from the party in control of the mail (not the Corporate Defendants), or (2) that he authored the rejected mail. *See id.* These failures are fatal to Cecil's claim that Defendants violated his Fourteenth Amendment due process rights as he as a recipient does not have the right to contest the rejection.

### 5. Defendants are entitled to qualified immunity

Given the abundance of authority rejecting similar claims and the dearth of authority supporting Cecil's contentions, Defendants would also be entitled to qualified immunity from any monetary damages.

Government officials sued under § 1983 are protected by qualified immunity "from suit for damages when their conduct does not violate a 'clearly established' constitutional right." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A qualified immunity analysis "involves a two-step inquiry, asking first whether a constitutional violation occurred and second whether the right violated was clearly

established." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (internal quotation marks omitted). A court may address these questions in either order. *Id.* at 188 n.6 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "Officials lose the protection of the immunity if they violate a constitutional or statutory right of the plaintiff and the right was clearly established at the time of the alleged violation such that an objectively reasonable official in the defendants' position would have known of it." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998) (citing *Harlow*, 457 U.S. at 818). "[T]he degree of knowledge of the law imputed to government officials is that imputable generally to a reasonable official." *Id.* This standard "gives ample room for mistaken judgments." *Malley v. Briggs*, 475 U.S. 335, 343 (4th Cir. 1986). "[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Porterfield*, 156 F.3d at 567 (citation omitted). Qualified immunity "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (citations omitted).

Considering the substantial authority approving similar mail systems and the lack of a single cited case upholding the arguments advanced by Cecil, Defendants could not reasonably be expected to know their actions transgressed any constitutional limits. Therefore, they are entitled to qualified immunity.

### 6. Cecil lacks standing to assert third-party claims.

Finally, Cecil appears to allege claims on behalf of the senders of his mail and the other inmates "similarly situated to him." (2d Am. Compl. ¶¶ 1, 12.) As a general rule, "[a] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This

district has recognized that prisoners do not have "standing to sue on behalf of other inmates." *Johnson v. Shear*, No. 7:10-CV-00381, 2011 WL 3880949, at *5 (W.D. Va. Sept. 1, 2011). Here, Cecil has not pleaded any facts that would support any exceptions to the generally applicable rules prohibiting plaintiffs from asserting the rights of third parties.

This reasoning also dooms Cecil's complaints that the purported "contract" between the purchaser of the stamp who sent him incoming mail and the United States Government was breached when the mail was not delivered to Cecil in hard copy. (2d Am. Compl. ¶¶ 18–24). This claim, if cognizable, would accrue to the stamp purchaser only; and not to Cecil as Cecil does not claim any of his outgoing mail was not delivered.

       7.   <u>Cecil's challenge to a policy about books that was not implemented fails.</u>

Cecil also objected to a restrictive book policy that was apparently announced but then withdrawn before implementation. The second amended complaint explicitly states that the policy was not implemented so it has [not] yet had any effect on him, but that Cecil wanted to seek injunctive relief to prevent anticipated future harm. (2d Am. Compl. ¶¶ 49–50.) Because Cecil has sustained no injury in connection with the withdrawn policy and he could claim no likelihood of future injury due to his release, no claims about the book policy are viable at this time.

## V.     Conclusion

For the reasons above, the court **GRANTS** Defendants' motions to dismiss the second amended complaint (Dkts. 72, 73, 77) and **DENIES** the motions by Cecil for additional relief (Dkts. 58 and 86). An Order will follow.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to Cecil.

**ENTERED** this 25th day of March 2025.


/s/ *Jasmine H. Yoon*
_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE